# In the United States Court of Federal Claims

No. 24-2066
(Filed: May 15, 2025)
NOT FOR PUBLICATION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*
GREAT NORTHERN PROPERTIES, L.P.,   \*
\*
Plaintiff,   \*
\*
v.   \*
\*
THE UNITED STATES OF AMERICA,   \*
\*
Defendant.   \*
\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## OPINION AND ORDER

On December 13, 2024, Plaintiff, Great Northern Properties, L.P., filed its complaint here seeking just compensation for the alleged taking of coal rights located in Powder River County, Montana.[1]  The United States (the "Government"), moved to dismiss for failure to state a claim under Rule 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"), contending that Plaintiff's claim is barred by the doctrine of res judicata.  The Government explains that Plaintiff filed the same claim here in 2021, which sought just compensation for an alleged taking based on the Montana Department of Environmental Quality's alluvial valley floor[2] determination and therefore must be dismissed.

For the reasons set forth below, the Court holds that Plaintiff's claims are barred by res judicata and hereby **GRANTS** the Government's Motion to Dismiss.

## I.    PROCEDURAL HISTORY OF 2021 COMPLAINT

In 2021, Plaintiff filed a complaint here alleging a taking of its "interest in the Otter Creek coal property for which Plaintiff must be awarded and paid just compensation."  2021 Compl. ¶ 29.  The Government moved to dismiss, asserting that the Court lacked subject matter

---

[1] Along with its complaint, Plaintiff notified the Court that this case is directly related to a case Plaintiff filed here in 2021, and thus the case was assigned once again to the undersigned.

[2] An alluvial valley floor is defined as "the unconsolidated stream-laid deposits holding streams with water availability sufficient for subirrigation or flood irrigation agricultural activities . . . ."  30 C.F.R. § 701.5 (2017).

jurisdiction and Plaintiff failed to state a claim for relief. *See Great N. Props., LP v. United States*, No. 21-2148, 2022 WL 2903359, at *3 (Fed. Cl. July 22, 2022), *aff'd*, 92 F.4th 1364 (Fed. Cir. 2024). Although this Court held that Plaintiff's claims were within the statute of limitations (contrary to the Government's assertion), this Court dismissed the complaint for lack of subject matter jurisdiction and for failure to state a claim. *Id*. Plaintiff filed an appeal, and The Court of Appeals for the Federal Circuit affirmed this Court's decision. *Great Northern Props., L.P. v. United States*, 92 F.4th 1364 (Fed. Cir. 2024).

## II.     JURISDICTION AND STANDARD OF REVIEW

The Tucker Act authorizes the Court of Federal Claims "to render judgment upon any claim against the Government founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the Government, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a). Claims for damages under the Takings Clause of the Fifth Amendment are within this Court's Tucker Act jurisdiction. *Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1, 12, (1990); *see also Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1368 (Fed. Cir. 2005).

### A.  Standard of Review for Motions to Dismiss Pursuant to RCFC 12(b)(6)

A complaint may be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). When considering a motion to dismiss for failure to state a claim upon which relief may be granted, the Court "must accept as true all the factual allegations in the complaint, and must indulge all reasonable inferences in favor of the non-movant." *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (citations omitted).

### B.  The Doctrine of Res Judicata

Relevant to the case at hand is the doctrine of res judicata. Res judicata will bar litigation when: (1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first. *Ammex, Inc. v. United States*, 334 F.3d 1052, 1055 (Fed. Cir. 2003). When completing a transactional facts analysis, courts must evaluate whether the "same nucleus of operative facts" are present in both claims. *Ammex, Inc.*, 334 F.3d at 1056. A transactional fact analysis gives "'weight to such considerations as whether the facts are related in time, space, origin, or motivation . . . .'" *Phillips/May Corp. v. United States*, 524 F.3d 1264, 1271 (Fed. Cir. 2008) (quoting Restatement (Second) Judgments § 24(2) (1982)).

## III.     DISCUSSION

The Government argues that Plaintiff's complaint is barred by the doctrine of res judicata because all three elements of the test for res judicata are met here.[3]   ECF No. 6 at 10.  Plaintiff does not dispute that the first two elements are met here, as the parties are identical, and the first suit proceeded to a final judgment on the merits.   ECF No. 9 at 8.  Thus, the dispute at issue here is whether the current claim is based on the same set of transactional facts that were adjudicated in Plaintiff's 2021 complaint.  ECF No. 9 at 8.  The Government argues that the operative facts in this case are identical to those alleged in Plaintiff's 2021 complaint, and therefore Plaintiff's complaint is barred by res judicata.  For the reasons explained below, the Court agrees with the Government.

First, the property at issue in both complaints is the same.  In both cases, Plaintiff alleges that the property, which is the subject of its takings claim, is located "in Powder River County, Montana, in Townships 3 and 4 South, Range 45 East, approximately five miles southeast of where Otter Creek flows into the Tongue River." *Compare* 2021 Compl. ¶ 7 *with* Compl. ¶ 38; *see also* ECF No. 2 at 2 (admitting that both cases concern the same property).  Thus, it is clear that the property at issue is the same in both complaints.

Further, in both complaints, the facts are the same: (1) Plaintiff entered coal leases with Arch Coal, following which an affiliate of Arch Coal developed a mining plan and sought a permit from MDEQ.  2021 Compl. ¶¶ 11, 14, 17; Compl. ¶ 41; (2) Then, MDEQ determined that the proposed mining would interfere with an AVF and therefore certain coal could not be mined.  2021 Compl. ¶¶ 20–22; Compl. ¶¶ 42, 60; (3) As a result, Plaintiff alleges that it cannot mine about 311 million tons of its coal.  2021 Compl. ¶ 23; Compl. ¶ 42; (4) Plaintiff alleges damages in the amount of more than $1 billion.  2021 Compl. ¶ 24; Compl. ¶ 65.

Moreover, in both complaints, Plaintiff sought the same relief.  In Plaintiff's 2021 complaint, Plaintiff sought "damages in an amount of at least $ 1,310,872,932.00" as "just compensation for the United States' taking of Plaintiff's interest in the Otter Creek coal property located in Powder River County, Montana."  2021 Compl. ¶¶ 1, 29.  In the instant complaint, Plaintiff similarly seeks "just compensation for taking of the Plaintiff's property in the form of a money judgment, in an amount to be proven at trial estimated to exceed $1 billion."  Compl. ¶ 124.  Plaintiff's request for the same relief highlights that both cases are based upon the same operative facts.  *See Fuller v. United States*, 148 Fed. Cl. 199, 208 (2020) ("repetitive requests

---

[3] The Government uses the term res judicata interchangeably with the term claim preclusion throughout its briefs.  *See, e.g.*, ECF No. 6 at 12-14.  Because the term claim preclusion has been used interchangeably with res judicata, the Court will use the term res judicata throughout the opinion.  *See Inguran, LLC v. ABS Glob., Inc.*, 72 F.4th 1272, 1277 (Fed. Cir. 2023); ("Under the doctrine of res judicata (or claim preclusion)"); *Ammex, Inc.*, 334 F.3d at 1055 ("We first address the issue of res judicata or claim preclusion."); *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1340 (Fed. Cir. 2012) ("based on the doctrine of res judicata, or claim preclusion.").

for the same relief indicate that the subject cases are based on the same nucleus of operative fact.").

In its response, Plaintiff demurs that while Plaintiff's 2021 complaint focused on the Montana Department of Environmental Quality's ("MDEQ") Alluvial Valley Floor ("AVF") determination as the taking, the current complaint addresses a separate and distinct taking: the Government's failure to fulfill its statutory obligation to complete a coal exchange after Plaintiff submitted its detailed exchange application, or to otherwise compensate Plaintiff.  ECF No. 9 at 7.  Plaintiff avers that this second taking involves different operative facts, different time periods, and different legal obligations than those at issue in the 2021 case and thus res judicata does not bar these claims.  ECF No. 9 at 7.

The Government replies that this argument is flawed.  This Court agrees.  First, Plaintiff raised the coal exchange provision in its prior appeal.  The Federal Circuit noted that Plaintiff "also argues that the potential remedy of a federal coal exchange . . . implicitly acknowledges that compensation is due from the federal government when application of AVF regulations precludes mining of private coal." *Great N. Props.*, 92 F.4th at 1371 n.5 (internal quotation omitted).  Rejecting the argument, the Federal Circuit stated "[w]e do not agree." *Id.*  Thus, the coal exchange was part of Plaintiff's earlier suit.

The Federal Circuit holds that res judicata bars different legal theories that could have been asserted when based on the same core operative facts. *See Stearn v. Dep't of Navy*, 280 F.3d 1376, 1380 (Fed. Cir. 2002) ("Under the doctrine of res judicata, a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action.").  Thus, even if Plaintiff did not raise the coal exchange provision in its prior appeal, Plaintiff's complaint would still be barred by res judicata because Plaintiff simply asserts a different procedural defect here based on the same core operative facts as its 2021 complaint.  Instead of focusing on alleged defects in the AVF determination itself, Plaintiff "focuses on the unwillingness of the federal government to effectuate a statutorily mandated coal exchange."[4]  ECF No. 2 at 2.

Here, any claims about the exchange process necessarily stem from the same nucleus of operative facts as Plaintiff's first suit.  Plaintiff only sought to exchange its coal because of MDEQ's AVF determination, and thus MDEQ's decision is the underlying predicate for the claim concerning the coal exchange. *See, e.g.*, 30 U.S.C. § 1260(b)(5) (stating congressional policy that Interior shall develop coal exchange program "to acquire private fee coal precluded from being mined by" SMCRA's AVF provisions).  The Court already adjudicated Plaintiff's takings claim against the United States based on MDEQ's AVF decision, and thus Plaintiff's new complaint which is based upon the same decision is barred. *See Anderson v. United States*,

---

[4] Plaintiff filed a notice under Rule 40.2 that its 2021 case was "directly related to the instant action."  ECF No. 2 at 1.  Directly related cases are cases that "involve the same parties and are based on the same or similar claims" or "involve the same contract, property, or patent." RCFC 40.2(a)(2).  According to Plaintiff, the only differences between the suits are "additional causes of action and new claims."  ECF No. 2 at 2.

46 Fed. Cl. 725, 730 (2000), *aff'd*, 4 Fed. Appx. 871 (Fed. Cir. 2001) ("[A]ltering the theory of recovery does not form a new claim under the transactional approach.").

Finally, it is clear from the complaint that Plaintiff could have brought its exchange-related claims in 2021. According to Plaintiff, it met with the Bureau of Land Management on December 5, 2017—almost four years before its first suit—"to initiate the coal exchange process." Compl. ¶ 44. By January 2018, Plaintiff believed that the Bureau would not initiate the exchange process. Compl. ¶¶ 45–46. Plaintiff continued to press its exchange efforts anyway and submitted an exchange application in December 2018—about three years before its first suit. Compl. ¶ 49. Plaintiff contacted and met with the Bureau through early 2020 to discuss an exchange, but none took place. Compl. ¶ 59. Therefore, when Plaintiff filed its claim against the United States almost two years later, it could have alleged facts about or raised its claims about the exchange process.[5]

In its response, Plaintiff argues that it is relying on "new" facts on which it could not have relied in 2021. It asserts that *Stearn* is distinguishable because Plaintiff's new complaint "is based on federal actions (and inactions) that continued beyond the 2021 litigation." ECF No. 9 at 11. This argument lacks merit. Plaintiff highlights that *nothing* else has occurred. It argues that "Plaintiff's exchange- related claims are based on the government's *continuing refusal* to complete the exchange process—conduct that continued well after the filing of the 2021 complaint." *Id.* (emphasis added). In other words, things are the same as when Plaintiff sued in November 2021. That's not a new fact. All the facts that Plaintiff relies on took place more than two years before it sued.

Plaintiff also argues in its response that the Government's inaction constitutes an "ongoing violation [which] gives rise to a new claim each day, not one of which is barred by res judicata." ECF No. 9 at 16. Plaintiff, however, fails to support this argument. Plaintiff argues that *Bowen v. City of New York*, 476 U.S. 467, 480–81 (1986)), supports its argument that "the government's failure to complete the coal exchange is not a one-time event but an ongoing violation that continued after the Federal Circuit's decision." ECF No. 9 at 14. Plaintiff, however, misreads *Bowen v. City of New York*. The Court never discussed any continuing-claim concept. *See Bowen*, 476 U.S. at 480–81. Rather, the Court discussed whether the relevant Social Security Act statute of limitations could be equitably tolled when the government's conduct was hidden from the plaintiffs. *Id.* This issue has no bearing here.

---

[5] In its response, Plaintiff argues that it was "still pursuing the exchange remedy" when it sued in November 2021. ECF No. 9 at 17. Plaintiff does not support this assertion with any facts, and further Plaintiff's complaint shows that this assertion is false. Indeed, by suing in November 2021, Plaintiff was pursuing an *alternative* remedy to the exchange process, so it could not have been continuing to pursue an exchange with the Bureau. *See Whitney Benefits, Inc. v. United States*, 752 F.2d 1554, 1558 (Fed. Cir. 1985) (concluding that the exchange provision is merely an optional way in which an owner subject to an adverse AVF decision may seek a remedy); *see also* ECF No. 9 at 18. Thus, Plaintiff could have brought its exchange-based claims in its first suit.

In addition, Plaintiff points to *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), in which the Supreme Court addressed the application of statutes of limitations to continuing violations.  In that case, the Court held that "[w]here the challenged violation is a continuing one, the staleness concern disappears."  *Id.* at 380-381.  This case similarly does not support Plaintiff's argument as *Havens Realty* addressed continuing harm as it relates to statutes of limitations and does not concern res judicata.  Thus, Plaintiff's argument is unsupported.

Thus, for the reasons detailed above, Plaintiff's complaint is barred by res judicata. Because the Court holds that Plaintiff fails to state a claim pursuant to RCFC 12(b)(6), it is unnecessary to consider the Government's additional RCFC 12(b)(6) arguments.

## IV.    CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Government's Motion to Dismiss.  The Clerk is directed to enter judgment accordingly.  No costs.

**IT IS SO ORDERED.**

<u>s/Edward J. Damich</u>
EDWARD J. DAMICH
Senior Judge